## PRAIRIE OIL & GAS CO. v. BROWN et al.

No. 21874. Opinion Filed June 30, 1931.

Rehearing Denied July 28, 1931.

Burford, Miley, Hoffman & Burford, for plaintiff in error.

Ruby Turner Looper, for defendants in error.

KORNEGAY, J. This is a proceeding brought by the Prairie Oil & Gas Company to review an award made by the State Industrial Commission, on the 4th of October, 1930.

The award found that the claimant received an accidental personal injury arising out of and in the course of his employment with the respondent below, now the petitioner, and as a result of the accidental personal injury the claimant has been disabled from the date of the accident up to this date, and is still so disabled. It further finds that the respondent below paid claimant one-half wages for a period of five months beyond the five-day waiting period, entitling the claimant to compensation from July 5, 1928, up to the date of the award.

An inspection of the evidence introduced on behalf of the claimant, and also on behalf of the respondent below, is conclusive, as it seems to us, that the trouble with the claimant below was not an accidental personal injury arising out of and in the course of his employment with the petitioner. The claimant himself did not act on that theory.

Sometime about the first of the year of 1927, the claimant presented a claim for an injury arising out of a fall while he was engaged as a truck driver in the employ of the Prairie Oil & Gas Company. Evidently he was settled with for that, and went back to work, though to work of a lighter nature, but he received full pay practically all the time after the injury, up to and including three days of the month of October, 1927.

A first notice of injury and claim for compensation in this matter was filed with the State Industrial Commission on the 17th of September, 1928, and the nature and extent of the injury at that time was "hemorrhage of lungs caused from heavy lifting." The cause of the accident was given as "lifting flow line, which was being laid," and the place of the injury was on the Hardjo lease near Newby, Okla., and the time was October 1, 1927. He stated that he was paid one-half wages from date of injury to June 21, 1928, but did no work, and his only injury was "permanent affection of the lungs." There was a further statement that the employer, though requested, had not furnished medical attention, and the names of the attending physicians were Dr. L. J. Moorman and Dr. A. A. Gregory, both of Oklahoma City. This was signed on the 25th day of July, 1928.

The evidence before the Commission was that of the claimant himself, and of his fellow workmen, and of the doctors, one of whom examined him in January, 1927, and one who examined him in October, 1927. Also, of Dr. King, who examined him several years before, when he entered the employ of the respondent below. Nobody seems to have known anything about the hemorrhage that the claimant stated he had as a result of lifting the flow line except the claimant. All of the employees of the Prairie Oil & Gas Company denied any knowledge of the injury, if an injury occurred.

The claimant evidently accepted what the company styled a "sick benefit" up until June, 1928, and there is nothing in the record to indicate that it was paid to him by virtue of a claim of accidental injury, sustained on or about October 1, 1927. The claimant's own version of the matter indicates that the accidental personal injury was an afterthought, as being the foundation of his trouble. His symptoms, as detailed, indicate most clearly a pulmonary tuberculosis. At page 29 of the transcript, he says:

"Yes, I have hemorrhages at any exertion, such as lifting or hard work."

His claim was that the doctors, about the first of the year, told him that he had bad tonsils and this caused a bronchial hemorrhage, and that by operating and removing the tonsils, he would be all right. He claimed that the hemorrhage occurred about 5 o'clock in the afternoon while they were working on the Hardjo lease, and that they finished about 5:30 or 6 o'clock. His claim was that, after he lifted the pipe, he felt a strain and had a hemorrhage. He gives the date of his injury as October 1, 1927, though from the time books it must have been two or three days before October 1st. He drew pay for three days in October

In response to a question of the counsel, on page 35, on being asked to describe how the hemorrhage occurred, he says:

"A. When this hemorrhage occurred was right after left some 20 or 30 minutes possibly, and I was with Claude Wadley, Charlie Deprew, and Jack Peppermet, but I didn't tell those boys about it, but I went right to George Farbro, the superintendent, and showed him my condition, showed him blood on a piece of paper, which he carried out; his wife said she was afraid of germs; that was on Saturday night, some eight or nine o'clock. Q. At that time did you tell him you had strained yourself? R. Yes, sir. Q. From lifting on this flow pipe? A. Yes, sir. Q. I will ask you, Mr. Brown, whether or not you have ever received compensation from the Prairie Oil & Gas Company for your injury of October the first? A. Nothing, only half time for some seven or eight checks, only compensation I ever received. Q. I will ask you whether or not you were put under a physician and offered treatment after that second injury? A. On October the third I went to Mr. Wolf at Tulsa; he sent me to Doctor Mangam in the Mayo Building, and I am not positive. I believe he sent me to Doctor Lehvine for an X-ray. * * * Q. In order to refresh your

memory, the report from Doctor Lehvine to Doctor Mangam and I will ask you whether or not that is the first information you ever had, that the first they ever gave you that they thought you had tuberculosis? A. That is the first time. Q. That made October 5, 1927? A. After this examination, I went back to Doctor Mangam at the Mayo Building that is the first time I really knew I had turberculosis, then in November I saw the report. Q. You didn't see this report in October? A. No, sir. Q. Saw it the following November? A. Yes, Doctor Mangam told me after I took this I had T. B. on October 5, 1927. Q. Did you ever have knowledge of the fact that you had T. B. prior to that time? A. I never had any T. B. prior to that time, and neither has any of my folks or relations."

His admitted associates on the work knew nothing of the accident, and he states that he did not inform them of the hemorrhage. From the course of the examination, conducted by the attorney for the claimant, it is evident that a hemorrhage occurred, according to the version of Mr. Brown, while he was at the house of Mr. Farbro. At page 85, the counsel puts to Mr. Farbro the question:

"Q. Isn't it a fact, Mr. Farbro, that the reason you sent him to Tulsa was on account of that strain and him having a hemorrhage in your house? A. He had the hemorrhage, I sent him to Tulsa. I told him that I would see—I asked him to go to Tulsa, and I told him I would have to take it up with the higher officials."

Further along, this question was asked:

"Q. I asked you when he came over there and had that hemorrhage, did he tell you what caused the hemorrhage? A. Yes. Q. What did he say? A. He said he had T. B."

The examination made by the physicians showed unequivocally, and without anything to contradict it, either from positive test or circumstance, that on October 5th, after the supposed accident, he was examined by a specialist, Dr. Lehvine, of Tulsa, a graduate of the University of Oklahoma Medical School in 1917, and a specialist in physical diagnosis and X-ray, and there was no evidence of trauma at that time, and no evidence of a strain. He, however, did find a long standing tubercular condition of both lungs, and the tissue was destroyed as a result of pulmonary tuberculosis. He stated that it would have required four or five years to have developed such a condition as he found.

Dr. Larrabee, a practitioner since 1910, and who was in charge of the laboratory at St. John's hospital, at the time that the claimant came there, made an examination on the 14th of January, 1927. There was a good deal of colloquy about introducing this evidence, but it was finally admitted, largely by consent. An X-ray fluoroscopic and steroscopic examination had been made, and it clearly showed that the claimant at that time was very sorely afflicted with pulmonary tuberculosis, and that it was of long duration at that time.

There does not appear to be anything in this record that would contradict the reports of these physicians. In fact, the testimony of the claimant corroborates it very strongly, and the testimony of his coemployees goes a very long ways towards conclusively establishing that no injury of any kind happened to the claimant by reason of his employment and arising out of it.

A great many decisions of this court are cited as bearing on the proposition of the rights of the parties. It is not necessary to discuss them in detail, but we think the proposition that the claimant did not sustain the burden that is cast on all claimants in cases of this kind, is correct.

The point is raised that no notice of the injury was given. We think that the conduct of the claimant in that matter is strongly indicative of the fact that he, himself, did not think that he received an injury in the course of his employment. Under decisions of this court, the record does not show sufficiently the excuse for the failure to give notice in this matter, prescribed by law. However, as to the circumstances of the injury detailed and proved before the Commission, there was no competent evidence on which to base the award, and this case comes clearly within the doctrine announced in this court in the case of Cosmos Mining Co. v. State Industrial Commission, 101 Okla. 283, 225 Pac. 720, and the decision of this court in Hogan v. State Industrial Commission, 86 Okla. 161, 207 Pac. 303, and Associated Employers' Reciprocal v. State Industrial Commission, 83 Okla. 73, 200 Pac. 862.

The award of the Commission is vacated, and the case is remanded to the Commission with directions to dismiss the proceeding.

RILEY, HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., concurs in the result. CLARK, V. C. J., dissents. ANDREWS, J., disqualified and not participating.

CLARK, V. C. J. (dissenting). I cannot agree with the conclusion reached in this case for the reason it is necessary to review and weigh the evidence to arrive at the conclusion reached. The record discloses that,

on or about the 1st day of October, 1927, Joseph Brown, while in the employ of petitioners herein, was engaged in the hazardous employment subject to the provisions of the Workmen's Compensation Law of the state of Oklahoma, and while so employed, he, with other employees, were loading a 5 3-16 inch flow line, which is an iron pipe used in the oil fields.

The record further discloses that respondent, Brown, prior to the injury, had been examined for life insurance, and he had had an examination with petitioners, showing that he was in good condition and could do any kind of work. The record discloses that while in the employ of petitioners, respondent received an injury on January 8, 1927, and that later on, or about October 1st, while lifting this iron pipe, respondent felt a strain which caused a hemorrhage from his lungs; that he immediately went to the foreman of the petitioner, informed him of the injury, and exhibited to him the blood from the broken blood vessel.

The evidence further shows that subsequent to the injury, respondent was examined and found to have tuberculosis; some of the doctors testified that the same was of long standing, that is, at the time of the injury the respondent was suffering with tuberculosis.

The Industrial Commission found that respondent received an accidental personal injury arising out of and in the course of his employment with petitioners. As a result of said accidental personal injury, respondent had been disabled from the date of said accident to the date of the trial.

This is a finding of fact, and there is competent evidence to support the same, and this finding should not be vacated by this court on review.

By great weight of authority, it is held, by both state and federal courts, that the presence of some pre-existing disease will not preclude an employee from recovering compensation. It is clear, in this case, that if respondent did have tuberculosis, that the lifting of heavy pipe and the unusual strain broke the blood vessel, caused a hemorrhage and accelerated the disease. The fact that the tuberculosis, at some uncertain and undetermined time in the future, would cause respondent's disability, should not preclude him from recovering compensation for the disability so long as said disability is a direct result of the accidental injury. This court, in the case of Shell Petroleum Corporation v. Moore, 147 Okla. 243, 296 Pac. 390, in the 2nd paragraph of the syllabus, held:

"Where respondent, having a pre-existing arthritic condition of the back which at some uncertain and undetermined time in the future might cause him to become totally incapacitated, was injured by a heavy piece of lumber falling upon him, resulting in immediate temporary total disability, held, that he was entitled to full compensation for temporary total disability."

This follows the rule announced in other states.

The Supreme Court of Pennsylvania, in Guyer v. Equitable Gas Co., 123 Atl. 590, in the fifth paragraph of the syllabus said:

"Death from fall rupturing blood vessels, which in turn caused rupture of cyst (a diseased condition of the pancreas), is compensable, though such diseased condition might ultimately have caused death."

The Supreme Court of Utah, in the case of Utah-Idaho Central R. Co. v. Industrial Commission of Utah, 267 Pac. 785, in the third paragraph of the syllabus said:

"In case a latent disease or trouble is accelerated or lighted up by industrial accident, and a more serious injury results by reason of the fact of the existence of such latent ailment than otherwise would have resulted, employee is entitled to additional compensation."

The Supreme Court of Illinois, in Sunnyside Mining Co. v. Industrial Commission, 151 N. E. 238, in the third paragraph of the syllabus held:

"Evidence held to show that employee's injury aggravated condition of spine already affected by arthritis, entitling him to compensation for permanent partial disability."

In the case of Warlop v. Western Coal & Mining Co., the Circuit Court of Appeals, Eighth Circuit, 24 Fed. (2nd) 926, in the fourth paragraph of the syllabus said:

"Where coal miner, having a pre-existing arthritic condition of the lower portion of his back, which at some uncertain and undetermined time in the future might cause him to become totally incapacitated, was injured by a heavy rock falling upon him, resulting in immediate total and permanent disability, held, that he was entitled to full compensation for permanent and total disability as prescribed by the Kansas Workmen's Compensation Act."

At page 930 of the above cited case, the court said:

"It does not appear in this case that, even had the accident not occurred, the disability would, at some certain time within the 8-year limit of the statute, have resulted from any disease. Certainly, the disease did not produce the disability of appellant. Did the accident, or was it a combination of the two? The arbitrator and the court found

the latter. There are probably lurking germs of disease in nearly all human mortals. Some accident may accelerate the disease and produce complete disability, but, if the disease would not have developed without the accidental injury, that must be regarded as the contributory proximate cause. Workmen's Compensation Acts are not limited in their benefits to perfectly healthy employees. An interesting comment on this phase of the matter is that in Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1818, 862:

" 'The proof goes no further, in support of defense of this suit, than to show that the plaintiff might, and perhaps would, at some-time, have been disabled by the disease that was lurking in his system, even if the accident complained of had not happened. And that is not much more of a defense than to say that every man must some day come to the end of his worldly career, accident or no accident'."

The courts very generally hold that, if an existing disease is aggravated by accident or injury, compensation must be paid for the resulting incapacity.

In Blackburn v. Coffeyville Vitrified Brick & Tile Co., 167 Kan. 722, 193 Pac. 351, the court held that the trial court's instructions to the jury, that plaintiff could not recover for an aggravation for any disease that he had prior to receiving injury, was error, and the court cites with approval a number of leading cases on the subject.

In my opinion, the conclusion reached is erroneous, and the award of the Industrial Commission should be affirmed.