### CONTINENTAL OIL CO. et al. v. PITTS et al.

No. 23211.   Opinion Filed July 12, 1932.

Owen & Looney, Paul N. Lindsey, and Joe S. Lewis, for petitioners.

J. Berry King, Atty. Gen., Robert D. Crowe, Asst. Atty. Gen., and Charles D. Reed, for respondents.

KORNEGAY, J. This is an original proceeding to review an award of the State Industrial Commission awarding to the claimant before the Commission compensation for an injury, the order being as follows:

"Now, on this 27th day of November, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing held at Ponca City, Okla., on October 13, 1931, and a hearing at Oklahoma City, Okla., on October 31, 1931, at which hearing the claimant appeared in person and by his attorney, Chas. D. Reed, and the respondent and insurance company appeared by J. S. Lewis, said hearings being held before Chairman Thos. H. Doyle, to determine liability and extent of disability, and the Commission after reviewing the testimony taken at said hearings and all the records on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"1. That on the 16th day of March, 1931, the claimant was in the employment of the respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date he sustained an accidental injury, arising out of and in the course of his employment, consisting of an injured left leg.

"2. That the average wage of the claimant at the time of said accidental injury was $150 per month.

"3. That by reason of said accidental injury the claimant has been temporarily totally disabled from the performance of ordinary manual labor from May 2, 1931, and is at this time temporarily totally disabled from the performance of ordinary manual labor.

"Upon consideration of the foregoing facts, the Commission is of opinion that the claimant is entitled to compensation from May 2, 1931, at the rate of $18 per week, or 29 weeks, in the total sum of $522, and that said compensation should be continued at the rate of $18 per week until otherwise ordered by the Commission.

"It is, therefore, ordered that within 15 days from this date, the respondent or insurance carrier pay to the claimant herein the sum of $522 or 29 weeks' compensation at the rate of $18 per week, and to con-

tinue paying the claimant compensation at the rate of $18 per week until otherwise ordered by the Commission, and pay all hospital, medical and doctor bills incurred by reason of said accidental injury.

"It is further ordered that within 30 days from this date, the respondent or insurance carrier herein file with the Commission proper receipt or other report evidencing compliance with the terms of this order."

That order is attacked on several grounds, some being technical and one going to the merits, which is that there was not sufficient competent evidence to sustain it. As shown by the record, on the 19th of June, 1931, claim No. 64020 was filed with the State Industrial Commission. The accident was alleged to have occurred March 16, 1931, and the cause of the accident was given as being:

"Caimant was painting a tower for respondent with a paint gun. He hung by his left leg hooked over the water coolers while so painting for about three hours, and the sharp edges of the coolers injured his left leg from his ankle to and including the knee. Seemingly a strain. It is total to date and possibly permanently."

The post-office address of the claimant was given as Box 1443, Ponca City, Okla.

On the 15th of July, a request was made for an immediate hearing. It appears that the post office of all parties concerned was Ponca City, and for that reason it was set for hearing at Ponca City. Notice of hearing was filed October 5, 1931, and proof was taken the 13th of October, 1931. There was a stipulation that the evidence in case No. A-64086, Ray Pitts v. Continental Oil Company, will be considered as evidence in this case.

The claimant, Pitts, testified about being sent to paint a water cooler, and about the slats sloping about 45 degrees. He described his method of proceeding from one board to another, and hanging under the board with the left leg. He testified as follows:

"A. * * * I worked up against this corner, could not hold on, the muscles in this knee were gone, I had this other hand on the rib below, it must have slipped off, or back towards the corner, or back against this little brace, at that time it felt like some one, just, that something struck me in the left leg and knee and ripped about three inches away, or felt like I tore something,—I never paid any attention to it at the time, before I got the other side painted, it began to feel like you bumped your elbow, fire burning like, I came on down,—By Mr. Reed: You had finished? A. Yes, sir, come on down to the ground, it felt like it would be similar to a needley, just like your elbow feels, something similar to that, I came down, and had my container and gun—Q. Twelve o'clock noon? A. Yes, sir. Q. Did you work that afternoon? A. Well, I got on the compressor after dinner. Q. Were you on this leg much? A. No, sir. Q. Was your foreman there at that time? A. Mr. German was the straw boss. Q. He was in charge of that? A. Yes, sir."

He then described about how he worked after that, and his notice of injury by talking later on to Mr. Stimson, and describes several jobs that he worked on, and how he was later taken to the hospital and an operation was made near the ankle bone on the left leg, and about his leg being put into a cast, and about the lack of feeling in the leg. He detailed injuries in the way of a sprained ankle in 1929, and an injury September 20, 1930, at Wichita Falls wherein he stepped in a hole and wrenched his leg and it bothered him all the time thereafter, and he was questioned about case A-640863.

It appears from this record that for several years the claimant had been in the employ of the Continental Oil Company, or its predecessor, and part of the time he had been engaged in painting, and part of the time he had done some of the scraping work preparatory to cleaning off for painting. He claimed to have had two admitted accidents during the time he was in the employ of the petitioners, and he claimed to have received a third, which was denied by the other side.

It is very evident that his wages amounted to more than his compensation would have been, and that he continued to work until the general lay-off of painters in May, 1931. As to the details of the 1929 accident, we are not thoroughly advised, but from the testimony of one of the doctors, who examined an X-ray of one of his ankles at that time, which had been injured by falling off of a stone wall, there were indications in the lower part of the left leg, about the junction of the long bones of the ankle, of a calcareous deposit in 1929, but the party continued to work, and whether he received any compensation or not, we are not advised, but the presumption from this record is that he did not, though negotiations for a lump sum settlement were had.

In September, 1930, at Wichita Falls.

Tex., he received an accidental injury on the same leg that could have resulted seriously, and probably did so result from the appearance of this record and his own testimony. However, it does not appear that he ever demanded compensation for that as long as he could draw wages, continuing to work until the 2nd of May, 1931, that being the last time he was on pay, and being informed of the suspension about the 3rd or 4th of May. This leg had constantly pained him, according to his statement, from the time of the accident, at least, in September, 1930, and he claimed that his physical condition was such that he could not work while standing upright, but worked largely while resting on the knee, and he even goes so far as to tell of fumbling with his shoes in order to prevent the boss from discovering his weakened condition, arising from this accident.

Whether he was well advised as to the decisions of this court or not is problematical, as he presented a claim to the Industrial Commission of this state for pay for the injury that occurred in Texas, September, 1930, the application being made June 22, 1931, to this Commission. Proof apparently was taken in that connection as to the injury and of its effects, though at the same time he had pending an application for pay for a subsequent injury, which was in March, 1931, for which this compensation is allowed as set forth in the above order. Subsequently, however, the claim for the accident in Texas was dismissed before the Commission here, and the claim for the accident happening in March, 1931, was prosecuted with the result of the award above set forth.

Some complaint is made of the failure to notify in writing the employer in the manner prescribed by the statute, and also complaint is made that on the practically admitted facts there is no right of complaint under our industrial law against the petitioner here for what happened, if anything did happen, in March, 1931. The claim, on the other hand, is that if there was not an accident at that time, what happened was an aggravation of the Texas accident, and therefore the award is sustainable.

This court is committed to the doctrine that our Workmen's Compensation Law is not extraterritorial in operation, and, consequently, to the doctrine that whatever injury occurred at Wichita Falls must be compensated under the laws of the state of Texas, which necessarily includes all consequences, and that the recovery that the claimant might have, though all the parties resided in Oklahoma and the contract was made here, and the employment at Wichita Falls was casual, is governed by the laws of Texas.

As applied to the present accident, there evidently was not a very important one from the way the claimant described it, as he says he paid no attention to it. He continued to work as he had been all the time, but the pain that he was suffering apparently had been there ever since the Wichita Falls accident, but in order to prevent his being taken off the pay roll, he continued to work even though his work caused him physical discomfort.

Complaint is also made of the failure to notify the company of the accident. An excuse, however, for this is offered by way of the verbal declarations to some of the former employees of the company that, owing to the fact that his leg was hurt, he would not return to work on a certain day. This was far, however, from being the kind of notice that the Workmen's Compensation Law evidently contemplates. The notice that was given here was given merely as an excuse for temporary absence and based on the theory of continuing work and drawing wages. The notice that is contemplated in the statute is for the purpose of notifying the employer of an injury with the view of medical attention and securing compensation for the injury and for diminished earning power.

Section 13351, Okla. Stat. 1931, requires the providing for compensation, according to the schedule contained in the article for the disability of an employee, "resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment." The extent of liability of the employer is fixed by the balance of the statute, and it is made exclusive by the next section. Section 13358, Okla. Stat. 1931, requires that notice of an injury be given, the language being as follows:

"13358. Employee's Notice of Injury. Notice of an injury for which compensation is payable under this act shall be given to the Commission and to the employer within 30 days after injury. Such notice may be given by any person claiming to be entitled to compensation, or by some one in his behalf. The notice shall be in writing, and contain the name and address of the employee, and state, in ordinary language,

the time, place, nature and cause of the injury and be signed by him or by a person on his behalf. It shall be given to the Commission by sending it by mail, by registered letter, addressed to the Commission at its office. It shall be given to the employer by delivering it to him or sending it by mail, by registered letter, addressed to the employer at his or its last-known place of residence; provided, that, if the employer be a partnership, then such notice may be given to any one of the partners, and if the employer be a corporation, then such notice may be given to any agent or officer thereof upon whom legal process may be served, or any agent in charge of the business in the place where the injury occurred. The failure to give such notice, unless excused by the Commission, either on the ground that notice for some sufficient reason could not have been given, or on the ground that the insurance carrier or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this act."

As applied to the present case, the claimant was a mature man, evidently thoroughly familiar with the purpose of compensation and with its rates, and elected not to give notice under the statute of a claim for compensation, and elected to continue at work and draw full wages, even though he deceived his employer, according to his own statement, as to his ability to work, arising out of a previous injury or occupational disease, whichever it might be in the present case. As long as employment was available, the laborer did not see fit to rely upon compensation. The evidence as to any accidental injury occurring while the painting was going on is practically negative, viewed from a standpoint of precedent history and from the standpoint of what developed later in the action and conduct of the claimant himself.

The doctors who testified, all of whom appear to be reasonably fair, were not able to locate the claimant's condition in May, 1931, as being referable to anything that had recently happened. The experts refer it to the accident of September, 1930, though, considering the shiver of bone that was found as a foreign body near the ankle, taken out about the 5th of May, in the light of the X-ray of 1929, one could naturally infer that that shiver of bone showed to be detached at that time, though it is possible, in view of the pain and trouble that the claimant had, that it may have been detached in the accident of September, 1930, but so far as referring it to an accidental personal injury that occurred while the claimant was painting in March,

1931, there is nothing that would indicate it, and the pain itself that occurred at that time, from which the inference was drawn by the claimant that he had received an accidental personal injury, was not sufficient to attract his attention to it at the time, as indicative of any traumatic condition then and there arising. What he went through with, as explained by one of the experts, would in all likelihood produce temporary obstruction of circulation, with the sense of "going to sleep," as we generally view it, of the limb, and especially one that had gone through with what this limb had gone through with, according to the admitted facts, and, further, in view of the fact that the occupation of the claimant was that of a painter who employed a "shooting machine" for painting purposes, and who had been engaged in scraping off paint preparatory to repainting.

Under our statutes, notwithstanding its liberal rules so prominently outstanding in favor of a laborer, we are not able to say, in the light of the admitted facts here, that the award should be sustained. The claimant evidently recognized this by filing his claim in Texas for the injury though several months after the injury occurred, during which time he drew full wages. We are not advised what the Texas provisions are, but it occurs to us that if the claimant is entitled to hold the employer liable in the Texas proceeding, undoubtedly the injury, that he now complains of as happening here, would be held to grow out of and be connected with the original accident under the evidence of the claimant, when all details are taken into account, and the uncontradicted evidence of the medical experts is considered. That accident is not here compensable, the company apparently having expressed a willingness to settle it, as the claimant says, in a lump sum, and the claimant having resorted since to the proceeding here, and in Texas. We think that justice would be best subserved, untrammeled with the question of a double recovery for the accident, by allowing the matter of responsibility for that accident to be adjusted by the Texas authorities.

Our law is based upon loss of wages and on the idea of compensation. It is evident in this case that when the 30 days expired from March 6, 1931, if extra pain had happened to the claimant at that time, he had not thought enough of it as an accidental personal injury arising on March 6th to present it to the employer, and that it was

only after the employment shut down that such a claim was made.

We are fully aware of our decisions holding that under the Workmen's Compensation Law the findings of fact of the Commission in industrial cases should be followed, but the qualifier is that there must be evidence reasonably tending to support the award. See case of Oklahoma Leader Co. v. Wells, 147 Okla. 294, 296 P. 751, and cases cited, and the case of Prairie Oil & Gas Co. v. Brown, 150 Okla. 299, 1 P. (2d) 783, and cases there cited.

We do not think the evidence here sufficient to support the award. The award is accordingly vacated, with directions, in view of the place of the accident and the conduct of the claimant thereafter, to dismiss the proceeding as being a matter that the Industrial Commission of the state of Oklahoma is not empowered to award compensation for, and without prejudice to claimant's rights to pursue his claim before the Texas Industrial Accident Board for full compensation for the accident of September, 1930.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. LESTER, C. J., and McNEILL J., absent.