John GOODWIN, Jr., Lois Goodwin, the Mead Corporation, Plaintiffs-Appellees,

v.

GEORGE FISCHER FOUNDRY SYSTEMS, INC., Defendant-Appellant.

No. 84–7241.

United States Court of Appeals, Eleventh Circuit.

Aug. 26, 1985.

---

James E. Clark, Birmingham, Ala., for defendant-appellant.

Stephen D. Heninger, Birmingham, Ala., for Goodwins.

Tony G. Miller, Cathy S. Wright, Birmingham, Ala., for Mead Corp.

Before KRAVITCH, CLARK and PECK,* Circuit Judges.

CLARK, Circuit Judge:

I. FACTS

In this diversity case, appellant, George Fischer Foundry Systems, Inc. (GFFS), appeals from a ruling by the district court dismissing its counterclaim seeking contractual indemnity. GFFS sought indemnity for its loss or liability to John Goodwin, Jr. from his employer, The Mead Corporation (Mead). Goodwin suffered severe burns arising out of the use of a Fischer converter furnace, sold by GFFS to Mead. Mead intervened in this case, and aligned itself with Goodwin, to recover workmen's compensation benefits paid by Mead to Goodwin, its injured employee.

GFFS claims to be expressly and contractually entitled to indemnity from Mead, pursuant to a sublicense agreement executed between GFFS and Mead in 1975. The agreement among other things provided that:

> Sublicensee hereby agrees to indemnify GFFS harmless of, from and against and to defend any and all claims, demands, losses, liabilities, damages and lawsuits for loss or damage to property or death or injury to persons arising out of the

---

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

use of the process or equipment by a sublicensee.

Another section of the sublicense agreement stated, "This agreement is made in and shall be governed by the laws of the state of Michigan." At the time that the sublicense agreement was executed, the prevailing law in Michigan, as in all of the states other than New Mexico, permitted recovery under an express contract of indemnity between employer and a third party sued, as here, by the injured employee.

Plaintiff, John Goodwin, Jr., sustained his injury in May of 1977, while working on the premises of his employer, Mead, and while using, in the process of his work, a converter furnace manufactured by GFFS. He was severely burned when the machine exploded. He filed this action on April 3, 1978 against GFFS in the circuit court for the Tenth Judicial Circuit of Alabama. In September of 1979, Mead, as plaintiff-intervenor, filed a complaint in intervention, maintaining that pursuant to its obligations under the Alabama Workmen's Compensation Act, as Goodwin's employer, it had paid him substantial workmen's compensation benefits on account of his injury sustained during his employment and demanding judgment reimbursing it for the amount of compensation already paid by Mead to Goodwin. GFFS then filed a counter-claim against Mead on the basis of the indemnity sublicense agreement set forth above. The case was subsequently removed to the United States District Court for the Northern District of Alabama at the request of the defendant. After the case was removed to federal court, Mead filed an answer to the counter-claim of GFFS for indemnity which was treated by the court as a motion to dismiss. The basis of this motion was a case decided by the Supreme Court of Alabama on March 10, 1978, *Paul Krebs & Assocs. v. Matthews & Fritts Construction Company, Inc.*, 356 So.2d 638 (Ala.1978). In *Paul Krebs & Assocs.*, the Alabama Supreme Court held that an employer's statutory immunity from suit under the Workmen's Compensation Act on account of injury to employees protects an employer from liability to third parties seeking indemnity under contractual provisions for claims arising out of injuries sustained by employees of the employer/indemnitor.

The district court granted Mead's motion to dismiss the counter-claim. The district court stated:

The contract states that it "shall be construed and governed by the laws of the State of Michigan," which laws appear to enforce such indemnification provisions, workmen's compensation payments notwithstanding. It is undisputed that Alabama law, by judicial interpretation of Code of Alabama § 25-5-53 (1975), fashions workmen's compensation as the exclusive remedy by any party against an employer, regardless of contract indemnity provisions to the contrary. *Paul Krebs & Assocs. v. Matthews and Fritts Const.*, 356 So.2d 638 (Ala.1978). The question is whether Alabama public policy in this area is sufficiently strong to override the parties' choice of Michigan law. The chosen law will be refused only to protect a fundamental policy of Alabama, and only if Alabama has a materially greater interest than Michigan in the determination of the particular issue.... In this instance, *Krebs* and its progeny, by interpreting an ambiguous, and nationally anomalous, statutory provision as overriding explicit contractual indemnity clauses, exhibit a consistent policy on the part of Alabama in favor of workmen's compensation as the sole remedy against employers. The statute itself evinces intent on the part of the legislature to create an exclusive workmen's compensation scheme to govern suits against employers. Moreover, Alabama's interest in preserving this exclusive scheme is far greater than Michigan's remote relationship to this action. Compliance with local law is critical to an orderly and uniform system for compensating industrial accidents. The indemnity claim by GFFS fails as violative of a fundamental Alabama public policy and is due to be DISMISSED.

*Record* at 95–96 (citations omitted).

After trial was commenced, plaintiffs' claims against the several defendants were

dismissed with prejudice pursuant to a settlement agreement by the parties. In the judgment of dismissal, the district court stated:

> It is further ORDERED that this Court's order dismissing the counterclaim of defendant, George Fischer Foundry Systems, Inc., against the Mead Corporation hereby becomes final.

GFFS filed a notice of appeal from that order. Appellant raises the following issue on appeal:

> Whether the district court's determination that the Alabama Workmen's Compensation Statute, as interpreted by the Supreme Court of Alabama in *Paul Krebs & Assocs.*, creates a public policy in Alabama sufficiently storng to bar the indemnity provision of the sublicense agreement between GFFS and Mead, notwithstanding the legality of the indemnity provision under the laws of Michigan and the agreement between the parties to apply Michigan law to any dispute.[1]

## II. THE LEGAL ISSUE IN CONTEXT

### A. *The Role of the Federal Court in Diversity Cases*

■ At the outset, several introductory principles should be mentioned. Pursuant to the mandate of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) a federal court in a diversity case is required to apply the law of the state in which the federal court sits. This applies equally to the conflict laws prevailing in the state in which the court sits. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, a federal court sitting in diversity should, whenever possible, "reach the same result as the state court would reach in deciding the identical issue." *See Trimper v. Nationwide Insurance Co.,* 540 F.Supp. 1188 (D.S. C.1982). Therefore, we are required, as was the district court, to function as an Alabama court in deciding the issue presented in this case.

### B. *The Law Regarding Indemnity Provisions*

In every state except Alabama,[2] indemnity provisions, such as the one at issue here, are enforceable. *See* Larson on Workmen's Compensation § 76.43. The *Paul Krebs & Assocs., supra,* decision, which gave Alabama the distinction of being the only state to disallow indemnity provisions under these circumstances, itself overruled *Eley v. Brunner-Lay Southern Corporation, Inc.,* 289 Ala. 120, 266 So.2d 276 (1972) which had followed the majority rule. In *Paul Krebs & Assocs.,* the Alabama Supreme Court stated:

> Squarely presented [in this case] is whether an employer's statutory immunity from suits on account of injury to employees under § 25–5–53, 1975 Code,

---

**1.** Appellant does not frame the issue in this way, but rather, in its brief specifies the issues as follows: (1) whether the exclusivity of the Workmen's Compensation Act of Alabama as a remedy against employers bars the enforcement of claims by third parties under express contracts of indemnity; (2) whether the supreme court's interpretation of the Alabama Workmen's Compensation Act and *Paul Krebs & Assocs.* creates a public policy in Alabama sufficiently strong to override the choice of Michigan law as agreed upon by the parties; (3) whether because the parties executed a contract of indemnity more than two years prior to the accident sued upon, and before the decision of the Alabama Supreme Court in *Paul Krebs & Assocs.* the indemnity provision is still enforceable; and (4) whether the district court's dismissal of GFFS's indemnity provision against Mead prejudices its right to enforcement of its counterclaim under the laws of Michigan which the parties have agreed will govern their respective rights under the contract of indemnity sued upon. Appellant's statement of the issues is redundant. In our determination there is only one issue in this case, and that is whether the district court erred in finding that the public policy of Alabama rendered the contract of indemnity entered into by GFFS and Mead unenforceable.

**2.** New Mexico did not allow such provisions until 1980. However, in *City of Artesia v. Carter,* 94 N.M. 311, 610 P.2d 198 (1980) reversed its previous position and now such agreements are permissible. The Alabama Supreme Court in *Paul Krebs & Assocs.* relied on a New Mexico case, *Gulf Oil Corp. v. Rota-Cone Field Operating Co.,* 84 N.M. 483, 505 P.2d 78 (1972) in reaching its decision. That decision was specifically overruled by the New Mexico court in *City of Artesia.*

protects the employer from suits by third parties seeking indemnity (under contractual provisions) from claims arising out of injuries sustained by employees of the same employer.

356 So.2d at 638.[3]

The Alabama Supreme Court answered the question as one of pure statutory interpretation stating:

The statute says that no employer shall be held civilly liable for injuries to workmen injured in the course of his employment. To allow a third-party tort-feasor to recover over against the employer for injury to an employee would be to allow indirectly what is prohibited directly.

356 So.2d at 639. The court went on to say:

We believe our statute compels this result. § 25–5–53 says that no employer (under the Workmen's Compensation Act) "shall be held *civilly* liable" for personal injuries to workmen. Krebs would have us engraft an exception to this language which would permit a civil suit against the employer where the employer agrees to indemnify a third-party tort-feasor sued for causing the injury to the employee. This writes into the legislation an exception which is not there.

356 So.2d at 640.

Several relevant facts must again be noted as we turn to the question of whether the Alabama Supreme Court's ruling in *Paul Krebs & Assocs.* is evidence of such a strong public policy that the indemnity provision contracted to by GFFS and Mead should not be applied. First, at the time the indemnity provision of the sublicense agreement was entered into such provisions were enforceable in Alabama. Additionally, at the time that Mr. Goodwin was injured, the provisions were still enforceable in Alabama. The parties agreed in their sublicense agreement that the law of Michigan would apply. There is no dispute that under the laws of Michigan such provisions were and are enforceable.

■ It is virtually hornbook law that contracting parties can choose the law of the state to govern their contractual rights and duties. Alabama recognizes the right of contracting parties to choose the law of another state that governs the contract so long as the consequences of such provisions are not likely to be contrary to Alabama law or public policy. *Craig v. Bemis Company, Inc.*, 517 F.2d 677 (5th Cir.1975). Thus the question now becomes, does the *Paul Krebs & Assocs.* decision indicate such a strong public policy that the parties' indemnity and choice of law provisions should be overridden.[4]

## C. *The Public Policy Defense*

A state may refuse to enforce a contract, valid in the state where made, if the con-

3. Section 25–5–53 of the Alabama Code provides in pertinent part:

The rights and remedies herein granted to an employee shall exclude all other rights and remedies of said employee, his personal representative, parent, dependents or next of kin, at common law, by statute or otherwise on account of said injury, loss of services or death. Except as provided in this article and article 2, as the case may be, of this chapter, no employer included within the terms of this chapter and no officer, director, agent, servant or employee of such employer shall be held civilly liable for any personal injury to or death of any workman who is an employee of the same employer and whose injury or death is due to an accident while engaged in the service or business of the employer, the cause of which accident originates in the employment. Nothing in this section shall be construed to relieve any person from criminal prosecution for failure or neglect to perform any duty imposed by law. The immunity from civil liability shall extend to any workmen's compensation insurance carrier of such employer and to any officer, director, agent, servant or employee of such carrier, and such immunity shall further extend to any labor union, or any official representative thereof, making a safety inspection for the benefit of the employer or its employees.

4. It is important to note what is not involved here. If this were an Alabama contract with no express provision for choice of another state's law, we would have no alternative, pursuant to *Erie, supra*, than to find that the indemnity provision was unenforceable. However, the Alabama courts have never decided whether *Paul Krebs & Assocs.* is evidence of such a strong public policy that the parties' choice of law decision will not be enforced. Thus, relying on what Alabama precedent is available, as well as other law regarding the public policy defense to choice of law provisions, we are required to

tract conflicts with the public policy of that state. *See Richland Development Co. v. Staples,* 295 F.2d 122 (5th Cir.1961). As the Alabama courts have stated, "[t]he true test to determine whether a contract is unenforceable because of public policy is 'whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public.'" *Colston v. Gulf States Paper Corp.,* 291 Ala. 423, 282 So.2d 251, 255 (1973) (citations omitted);[5] *see also Lowery v. Zorn,* 243 Ala. 285, 9 So.2d 872 (1942).

■ However, the principle that contracts contravening public policy are unenforceable should be applied cautiously and only in cases plainly within the reason for it. *Lowery v. Zorn, supra,* 9 So.2d at 874. It is repeated often in the cases that there must be a dominating public interest. *Ex parte Rice,* 258 Ala. 132, 61 So.2d 7 (1952).[6] As one of the leading commentators has stated, "[i]t is a rare case in which a claim validly existing under the law of one American state can be said to be so far outside the pale of social economic and moral standards currently imposed by our civilization as to be violative of the strong public policy of any sister state." Leaflar, *American Conflicts Law* § 48, p. 91–92 (Bobbs Merril 1977).

■ The mere fact that the forum court has no statute on the subject, or that the law of the forum differs from that of the other jurisdiction does not mean that the foreign law is contrary to the public policy of the forum. Invocation of the public policy of the forum as a bar to the enforcement of foreign rights of actions should be very narrowly limited.

The meaning of the phrase "public policy" is vague and variable. *Lowery v. Zorn, supra,* 9 So.2d at 874. However, "[g]enerally speaking, the public policy of a state is to be found in its constitution, its statutes, the decision of, or settled rules laid down by, it courts, and the prevailing social and moral attitudes of the community." 16 Am.Jur.2d, *Conflict of Laws* § 16, p. 38 (footnotes omitted). *See also Intercontinental Hotels Corp. v. Golden,* 15 N.Y.2d 9, 254 N.Y.S.2d 527, 203 N.E.2d 210 (1964). If the asserted public policy is nothing more than the fact that the forum state has prescribed a different law to govern a particular transaction, the foreign law will usually be enforced. *Richland Development Company, Inc., supra,* 295 F.2d at 127. *See also Hartford Accident & Indemnity Co. v. Delta Pine Land Co.,* 292 U.S. 143, 54 S.Ct. 634, 18 L.Ed. 1178 (1934).

### D. *The Principle Applied*

■ Thus, we must decide whether overriding public policy considerations are present in this case sufficient to override the parties choice of law decision. The appellee argues that the statute itself as interpreted in *Paul Krebs & Assocs.* is indication of an overriding public policy. If the statute in question, § 25–5–53 of the Alabama Code were to expressly prohibit such indemnity provisions then that would

make that determination as if we were an Alabama court.

5. *See also* 16 Am.Jur.2d, *Conflict of Laws* § 19, p. 42, "the forum court will not permit the enforcement of a contract regardless of its validity where made or when to be performed, where the contract in question is contrary to good morals, where the state of the forum or its citizens would be injured through the enforcement by its courts of contracts of the kind in question, where the contract violates the positive legislation of the state of the forum—that is, is contrary to its constitution or statutes,—or where the contract violates the public policy of the state of the forum." (footnotes omitted).

6. *See also* Scoles and Hay, *Conflict of Laws* § 3.15, p. 73 (West 1982) ("The public policy exception to the enforcement of rights based on foreign law is to be construed narrowly; fundamental policies of the forum must be offended; mere differences between the law of the forum and of the foreign jurisdiction are not enough."); Restatement (Second) of Conflict of Laws § 90 comment c (1971); *Loucks v. Standard Oil Co.,* 224 N.Y. 99, 111, 120 N.E. 198 (1918) ( [Courts] do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep rooted tradition of the common weal.").

be a persuasive argument. Public policy can generally be found in express and direct legislation. However, the Alabama statute relating to the exclusivity of remedy and suits against employers arising out of employee accidents subject to Alabama Workmen's Compensation Act makes no mention of public policy considerations, particularly in respect to suits by third parties under a contract for indemnity stipulated to be made in and to be governed by the laws of a state other than Alabama. Furthermore, as was noted earlier, the Supreme Court of Alabama had previously interpreted the statute to allow such indemnity contracts. It was not until the *Paul Krebs & Assocs.* decision, *supra*, after the parties had entered into the indemnity contract that Alabama law was judicially changed and the statute was so interpreted.

We further note that neither Mead nor GFFS are Alabama corporations. Rather, they are large and sophisticated corporations domiciled and incorporated in foreign states where such claims for contractual indemnity against employers in situations like the one involved here are enforceable. These companies knowingly entered into an agreement permitting indemnity and specifying the application of the law of the state of Michigan. It cannot be seriously contended that a member of the public in Alabama could be in any way affected in the suit between a Michigan company (GFFS) and an Ohio corporation (Mead) for indemnity under a contract legally enforceable in the courts of every other state in this country and more to the point, enforceable in the state whose law they chose to govern their agreement. As the Alabama courts have stated, "[i]f it definitely appears that enforcement of a contract will not be followed by injurious results generally [to the public], at least what the parties have agreed to ought not to be struck down." *Lowery v. Zorn, supra,* 9 So.2d at 874.

The most common examples of states refusing to enforce contracts against public policy are generally more extreme cases involving, for example, gambling. *See, e.g., Dorado Beach Hotel Corp. v. Jerni-*gan, 202 So.2d 830 (Fla.Dist.Ct.App.1967); *c.f., Intercontinental Hotels v. Golden, supra.* The issue involved in this case, however, is not one that can be said to be so far outside the pale of social, economic and moral standards currently imposed by our civilization as to be violative of the strong public policy of the State of Alabama.

Thus we believe that the district court erred in dismissing GFFS's counterclaim against Mead and that an Alabama state court faced with this issue would not have found an overriding public policy, therefore, the decision of the district court is

REVERSED and REMANDED.